Mr. Justice Bradley
delivered the opinion of the Court:
This causé comes here upon appeal from the decree of the Special Term of October 6th, 1891. That decree overruled exceptions to and ratified and confirmed the report of the auditor in all things.
*33 The object of the bill is to obtain a construction of the will of Philip Otterback, deceased, and the settlement of his estate.*
The decree required the trustees appointed to make sale and report the same to the court, and referred the cause to the auditor to state the account of the trustees, and the distribution of the funds.
The auditor made his report in conformity with the decree, *34 and it was filed in the cause June 18, 1891. The exceptions of the several appellants were filed the same day.
By his report the auditor charged Henry B. Otterback, one of the distributees, with the sum of $1,080, for the use and occupation of a portion of the real estate subsequent to the death of the life tenant, and this item is the subject of an exception by Mr. Otterback.
It appears by the evidence that this defendant made use *35 oí some vacant ground belonging to the estate, by placing-some frame buildings thereon, and occupying them as a livery stable, and for this use he is charged at the rate of $20 per month. It does not appear that he received any rents from third persons for the use of this property, or that he occupied it under any agreement or understanding that he was to pay rent, or that his occupation was to the exclusion of any of his co-tenants, or against their will or objection, or that it was of a larger portion of the estate than he could equitably enjoy. We are of opinion that under the circumstances his possession was the possession of all of the others, that he is presumed to have occupied the land with their consent, that he is not accountable for, nor *36 chargeable with, any sum for such use and occupation, and' that this exception should have been sustained. This disposes also of the exceptions not insisted upon in this court, taken by Sarah Kraft, Maria Tavenner, the complainant and others, based upon the failure of the auditor to charge H. B. Otterback at the rate of $30 instead of $20 per month for this use and occupation.
Henry B. Otterback is allowed by the report of the auditor the sum of $1,043.55, for commissions as administrator of the estate of his mother, Sarah Otterback. To this allowance he excepted as inadequate, and the defendants, Sarah Kraft, Maria Tavenner, Joseph J. Darlington, administrator, and Benjamin L. Otterback, and the complainant Catharine Bohrer, excepted, on the ground that Sarah Otterback had no estate, and that what apparently was in her name belonged to the estate of Philip Otterback, for handling which no commissions should be allowed.
It seems that upon the death of Mrs. Otterback, the mother, she had an apparent personal estate in her possession, which was really and actually made up of assets belonging to the estate of her deceased husband. She had reinvested some portions of the personalty in her own name, some of it was in the name of her agent, and some in her name as executrix. The Orphans’ Court decided that adT ministration upon her estate was necessary. Henry B. Otterback was appointed administrator, and required to' give a heavy bond. It is apparently true that he did not handle much of the estate, and that others probably performed some of his duties, but he assumed a responsibility required by the court, and was thereby involved in some trouble and expense, and, certainly to the extent of moneys which came into his hands as the estate of Sai'ah Otterback, whether really rightfully belonging.to the estate of Philip, or not, he is entitled to some commissions. We see no reason to doubt that in respect to that allowance the auditor came to a just and correct conclusion, and find that the decree.,of the special term properly overruled all of the exceptioxis taken to that item.
*37 Thomas E. Young is charged by the report of the auditor with the sum of $1,080, for the use and occupation of a portion' of the real estate subsequent to the death of the life tenant, and to this he excepted. The decree of the special term is a personal judgment against him for that amount.
The remarks made with reference to a similar charge against Henry B. Otterback apply with equal force to this charge, if it is intended to hold him responsible for use and occupation in the right of his wife.
•Pending the period intervening the death of the life tenant and the sale of the land under the direction of the will, Mrs. Thomas E. Young Had an equal right with the other heirs at law to use and occupy that portion of the realty, and in her right, her husband is not accountable or chargeable to the others therefor, inasmuch as the evidence indicates that such occupation was permissive by and not exclusive of the others. If it is sought to charge him, and hold him accountable for use and occupation as a stranger to the estate, as the decree apparently does, although he was made a party to the bill for the purpose of charging him as a trustee for some moneys that passed through his hands (in which respect he was completely exonerated by the special term) and although he is probably a proper party, as husband of Emma J. Young, one of the distributees, it is plain .that the court had not jurisdiction to render a personal judgment against him, and that the demand should have been pursued at law. The exception of Mr. Young should have been sustained. The counter exceptions claiming that he should have been charged a greater sum were properly overruled.
Exceptions by Emma J. Young, and counter exceptions by other distributees were taken to the item in the report allowing Mrs. Young her legacy of $2,000 bequeathed her by. the will, and interest thereon • from the death of the life tenant, on the one hand, because it is claimed that interest should have been allowed from the expiration of one year from the probate of the will, and on the other, because it is *38 claimed that neither legacy nor interest should have been allowed.
It is well settled that pecuniary legacies ordinarily bear interest from the expiration of one year from the death of the testator. Exceptions to the rule need not be stated. Unless the circumstances attending Mrs. Young’s right to this legacy and her conduct with reference to it indicate that it has been forborne, or that it would be inequitable in her to claim it, interest should be allowed as claimed in her exception.
By the terms of the will the duty was imposed upon the executors of investing the legacy until the daughter attained the age of 16 years, when it with its accumulations should be paid to her. The testator died on the 5th day of February, 1858, and the legatee, Emma J. Yoúng, attained the age of 16 in the following month of December. She was then living with her mother, and was supported by her, and she so- continued until her marriage in 1864. After her marriage she resided with her husband in the same house with her mother until the mother’s death, which occurred, March 27, 1885. By the will, the entire estate, after the payment of certain legacies, was given to the widow for life, and its usufruct became hers absolutely. Mrs. Young’s legacy became payable within the year following the death of the testator, but was not paid, and the auditor reports the fact to be, that, notwithstanding the direction of the will, it was not invested, or in any manner separated from.the estate in the possession of the widow and executrix. It remained, and by the legatee was so permitted to remain with the. corpus of the estate during the life of the life tenant. It does not appear that the legatee, at any time during the life of her mother, made any demand for the payment of the legacy. She must be charged with the knowledge that the life tenant was receiving the entire income from the estate as her own, and it must be deemed that the enjoyment of the amount of this legacy and its remaining in the corpus of the estate was with the permission of the legatee. Under *39 these circumstances, and inasmuch as practically seven-eighths of it would have to be paid by the other distributees, it appears to us that it would be inequitable-.to allow Mrs. Young interest for some 27 years prior to her mother’s death.
For the counter exceptants it is claimed, that, inasmuch as the will required the executrix to invest the legacy and turn it with its increment over to the legatee at 16 years of age, the executrix must be held to be a trustee quoad the legacy, to have held it in that capacity, and that her personal liability, as trustee, was substituted for the responsibility of the estate, and the legatee must look alone to that. The fact is, however, that the legatee attained the prescribed age within the period usually allowed for ascertaining the condition of the estate, that it cannot be assumed that the executrix did invest this legacy immediately, and the auditor finds that in fact it was never separated from the bulk of the estate, and was never, therefore, separately invested. The legacy is in the bulk of the estate, and must be paid out of it. The auditor appears to have reached an equitable adjustment of the matter by his allowance of the legacy with interest from the death of the life tenant, a^nd we find that the exceptions were properly overruled.
The other exceptions that remain to be considered relate to the failure 'of the auditor to charge against the distributive share of the complainant the due bill for $700— given by her husband to the life tenant and executrix. In behalf of the complainant it is claimed that it was an indebtedness to the life tenant, and therefore the Special Term rightly refused to charge it against the distributive share of the complainant. On the other hand, the exceptants claim that it was an advance out of the estate to Geo. A. Bohrer as husband, on account of his wife, to be charged to her in the ultimate settlement of the estate.
The due bill in express terms states the amount as due Mrs. Otterback, as executrix, and makes it a charge against the future settlement. This we understand to mean, that *40 this amount was to be treated as an advance upon her account, and was to be charged against her share in the future distribution of the estate. The character of the dealings between the legatees and executrix supports this theory, and the circumstances of this item appear to sustain it. The scheme of the complainant’s bill and of this whole proceeding requires that this advance, although represented by the individual note of George A. Bohrer, should be treated as an advance upon, to be credited to the distributive share of Mrs. Bohrer, and we so determine.
The decree shall be modified in accordance with this opinion.

 Note. — The will of Philip Otterback is as follows :
“I, Philip Otterback, of the City of Washington and District of Columbia, being of sound and disposing miird and memory and understanding, and capable in law of making a valid deed or contract, do hereby make, publish and declare this my last will and testament.
First. It is my will that my funeral expenses and all my just debts be punctually paid, including a suitable memorial to mark my grave.
Second. I give and bequeath to each of my nine children, to wit: Catharine, ITenry B., Sarah Maria, Lewis, Mary Rosetta, Cordelia and Emma Jane, the sum of two thousand dollars, to be paid to them as soon after my death as circumstances will permit, deducting from the said bequests respectively, such sum and sums as may have been advanced by me to them and every of them respectively in my life-time, and as shall be charged to them respectively on my books at my death, so as to equalize the amount to each one ; the portions which shall thus go to such of my daughters as at my death may be under the age of sixteen years, to be invested by my executors in some safe and productive stock, and the interest thereon to be accumulated by them until each of my said infant daughters shall attain the age of sixteen years, and then to be paid, with such accumulation, to my said daughters as they respectively attain that age; and in the meanwhile and while my said daughters are under the age of sixteen years respectively, they shall be supported, clothed, schooled and educated as their seniors have been out of my general estate hereinafter bequeathed to my wife, and I charge the said general estate with their said support, clothing and education.
Third. I give to my two grandsons, Philip H. Ward and William Rufus Ward, children of my daughter Sarah, left orphans by the death of their father, the late William H. Ward, the sum of two thousand dollars each, to be deducted, and taken out of the portion of my said daughter Sarah, in my estate after the death of my wife.
Fourth. I give to “ The Washington City Orphan Asylum ” the sum of two thousand dollars, and I give and direct my executors in such proportions as in their discretion they may deem best, to pay to several Sunday Schools connected respectively with the Baptist, the Episcopal and the Methodist churches now existing in the Eastern part of said city, the sum of two thousand dollars; and I also give and direct my executors to pay to the Female Union Benevolent Society, or by whatsoever name the association of ladies in the city of Washington for the relief of the poor of said city may be called, the sum of five hundred dollars; and to the association in said city known and called by the *34 name of “ The Young Men’s Christian Association,” the sum of five hundred dollars.
Fifth. If Mrs. Mary A. Stevenson shall outlive my wife, I give to her the sum of one thousand dollars. •
Sixth. These sums, to wit: Two thousand dollars to the Orphan Asylum, two thousand dollars to the Sunday Schools, five hundred dollars to the Ladies’ or Female Benevolent Association or Society, five hundred dollars to the Young Men’s Christian Association, and one thousand dollars to Mrs. Stevenson, making in all six thousand dollars, I direct to be paid after my wife’s death equally out of the portions of my two sons Henry and Philip in my estate.
Seventh. I give to my beloved wife Sarah all the rest, residue and remainder of my estate, real, personal and mixed during her natural life, so long as she remains a widow, and in the event of her marrying again, it is my will that she receive from my estate whatsoever she would have been entitled to if I had died intestate.
Eighth. Upon the death or marriage of my said wife, I direct that all of my said estate (subject nevertheless to the legacies and bequests hereinbefore contained, and excepting the part thereof hereinafter specifically devised), shall be sold by my surviving executor, and the proceeds thereof shall be equally divided among my said children and their descendants (the descendants to take their parents’ part), subject to the several deductions respectively hereinbefore provided.
Ninth. I give, devise and bequeath to my friend Levi Burk, of Fairfax County, in the State of Virginia, his heirs and assigns, after the death or marriage of my wife whichever may happen first, all my estate in said Fairfax County, Virginia, called Bellvoir, more commonly known as the "White House estate, with all its appurtenances, and fisheries, to be held by him and them upon the implicit trusts following, and for no other purpose, until the youngest child of all my said children shall have attained the age of twenty-one years; that is to say, the said trustee for the time being is hereby empowered to rent out the said estate and fisheries in such manner as he may deem best, or otherwise to manage the said estate to the best advantage ; to receive the rents, issues, income and profits thereof; to cut down and remove the doated, and decayed wood, and none other, except such as shall be necessary for the use of said estate, and after reserving to himself a commission not to exceed six per cent, on the said rents, income, issues and profits, for his trouble and responsibility, he shall apply the residue in the first place in his discretion for the education of each and every of my grandchildren now born and which may be born, until they shall respectively attain, the girls, the age of sixteen years, and the boys, the age of *35 twenty-one years ; and if there shall any surplus remain, the same shall be invested in some safe stocks bearing interest, to accumulate during the said trust; and when the youngest child now, and w’hich shall hereafter be born, of all my said children shall have reached, or if living, would have reached the age of twenty-one years, I direct that the said trustee and his assigns shall sell the said estate and fisheries with all the appurtenances at public vendue, and receive the proceeds, and divide the same together with the said stocks and the accumulations aforesaid among such of my children as may then be living, and the descendants of those who may have died (they taking a parent’s part); and for the purpose of keeping the said trust in active existence, I hereby empower .the said Levi Burk, by will or deed, to appoint and create new trustee and trustees to execute the same; and in default thereof, I desire the court having chancery jurisdiction in said county, on the application in writing of any of the parties interested therein, to appoint a trustee or trustees to execute the said trusts.
Finally. I hereby constitute and appoint my dear wife Sarah, and my friend Levi Burk, of Fairfax County, in the State of Virginia, executors of this, my last will and testament.
In testimony of all of which I have hereto set my hand and seal, this twentieth day of March, eighteen hundred and fifty-five, having first signed the four preceding pages hereof, and requested Joseph H. Bradley, Joseph H. Bradley, Jr. and C. Birnie to sign hereto as witnesses of this, my last will and testament.
(Signed) Philip Otterback.
"We, Joseph H. Bradley, Joseph H. Bradley, Jr. and C. Birnie, hereby certify that Philip Otterback, the testator above named, signed the foregoing paper-writing in our presence, and declared the same to he his last will and testament, and at his request, we do, in his presence and in the presence of each other, hereto sign our names as witnesses thereof.
(Signed) Jos. H. Bradley,
C. Birnie,
Jos. H. Bradley, Jr.